IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-132-FL

| | |
|---|---|
| CAROLYN L. DEMERCURIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon Plaintiff's amended motion for judgment on the pleadings [DE-25] and Defendant's motion for judgment on the pleadings [DE-28], to which Plaintiff replied [DE-30]. The parties submitted memoranda in support of their motions [DE-26, DE-29], and the time for the parties to file any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's amended motion for judgment on the pleadings [DE-25] be DENIED, that Defendant's motion for judgment on the pleadings [DE-28] be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff filed an application for disability insurance benefits ("DIB") on June 9, 2006, alleging a disability onset date of January 20, 2006. [DE-16]. Her application was denied

1

initially and on reconsideration. [DE-15]. Plaintiff brought her claim before an administrative law judge ("ALJ"), who held a hearing on August 14, 2008. [DE-15, DE-13]. On October 28, 2008, the ALJ issued a decision denying Plaintiff's application for DIB. [DE-12, pp.13-21]. Plaintiff then requested a review of the ALJ's decision by the Appeals Council ("AC") and submitted additional evidence as part of the request. [DE-12, pp.7-9]. On July 27, 2010, the AC took the additional evidence into the record but denied Plaintiff's request for review. [DE-12, pp.2-5]. The ALJ's decision thus became the final decision of the Commissioner. Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g). [DE-1].

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]

"Under the Social Security Act, [the court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its]

2

judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Social Security Administration has promulgated the following regulations establishing a sequential evaluation process to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

**ALJ's Findings**

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment. [DE-12, p.15]. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: (1) venous insufficiency of the legs; (2) morbid obesity; and (3) hypertension. [DE-12, p.15]. However, the ALJ determined that these impairments or combination of impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. [DE-12, p.17]. Based on the medical record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work. [DE-12, p.18]. The ALJ

3

then proceeded with step four of his analysis and determined that Plaintiff is capable of performing her past relevant work as a secretary for hospitals and as a print marketing coordinator. [DE-12, p.20]. Based on these findings, the ALJ determined that Plaintiff was not under a disability from January 20, 2006, the alleged onset date, through March 31, 2008, the date she was last insured. [DE-12, p.20]. The ALJ's findings were based upon the evidence in the record, summarized in pertinent part as follows.

**Plaintiff's Testimony and Other Evidence of Record**

Plaintiff testified she was born November 27, 1951, in Patterson, New Jersey, which made her fifty-six years old at the time of the hearing. [DE-13, T.pp.6]. Plaintiff graduated high school and later attended beauty school. Plaintiff worked as a beautician for approximately thirty years managing her own beauty shop, but she stopped on the advice of a vascular surgeon because of the pain and swelling in her legs. [DE-17, pp.7, 23; DE-13, T.p.22]. Plaintiff attended Dover Business College in order to retrain for secretarial work. [DE-13, T.p.23]. From 1996 until 1999, she worked as a print marketing coordinator for Neuro Medical Systems, Inc., a medical supply company, where she handled orders for medical brochures. [DE-17, pp.22, 24, 47; DE-13, T.p.15]. The position was "mainly a sitting job" with occasional lifting of papers, files, and small boxes. [DE-13,T.p.16].

On April 3, 1998, Plaintiff was injured in an automobile accident. [DE-13, T.p.24]. Surgery was ultimately required to repair the resulting damage to her left knee. Plaintiff stated her knee continues to "snap[] constantly and . . . give[] out" and that her surgeon warned her to never "kneel on it again or I'll need a knee replacement." [*Id.*].

From 2000 until 2003, she worked as a quality assurance assistant at Chilton Memorial Hospital. [DE-17, T.pp.22,47]. From 2004 until 2005, she worked part-time as an

4

administrative assistant at St. Joseph's of Wayne Hospital in New Jersey. [DE-17, p.47; DE-13, pp.6-8]. These hospital jobs consisted of preparing reports, photocopying, transcribing and typing meeting minutes, and using a database to monitor programs. The positions required mainly sitting, no lifting, some standing, and some walking. [DE-17, pp.25-26; DE-13, T.pp.6-9,14-15]. She was discharged from her St. Joseph's hospital job because she "too slow" [DE-13, T.p.11] and "wasn't keeping up" [DE-13, T.p.10]. In addition, her supervisor "wasn't happy with the way [she] was doing the minutes." [DE-13, T.p.10]. From March 2005 until January 2006, Plaintiff sporadically worked as a temporary employee for different companies. [DE-13, T.p.22]. She testified: "I would temp for like a week, and sometimes I would temp for two weeks." [DE-13, T.p.36].

Plaintiff stopped temping and filed for disability because "when [she] was temping [her] legs would swell," causing her to be "up all night in pain." [DE-13, T.p.17]. She suffers from venous insufficiency of the legs, morbid obesity, and hypertension. [DE-13, T.pp.17-18]. Plaintiff testified she is five feet, four and three-quarter inches tall and weighs two hundred and sixty pounds. [DE-13, T.pp.18-19]. When she worked at Chilton, Plaintiff weighed three hundred and sixty pounds, but she lost one hundred pounds after having gastric bypass surgery. [DE-13, T.pp.18-19]. To improve the blood flow to her legs, Plaintiff uses sequential pumps twice daily, which Plaintiff described as "big plastic boots" extending from her feet to her thighs that aid in compression and "push[] the blood back up." [DE-13,T.p.27]. She also wears compression stockings. [DE-13,T.pp.37-38]. She takes two prescribed medications for hypertension. [DE-13,T.p.39]. For her pain, Plaintiff uses a prescribed medication at night and ibuprofen during the day. [DE-13, T.p.39].

Plaintiff, her husband, and her mother moved to North Carolina in March of 2007 to be

5

closer to Plaintiff's children. [DE-13, T.pp.20-21]. Plaintiff testified she performs some household chores like cooking, laundry, and shopping. [DE-13, T.p.20]. She uses an electric cart while shopping, and her husband lifts anything heavy. [DE-13, T.p.31]. When she cooks, Plaintiff typically makes "stuff that goes in the oven like a meatloaf" or a slow cooker. [DE-13, T.p.20]. Plaintiff drives a few miles twice weekly to go to the grocery store or to visit her children, all of whom "live within five minutes." [DE-13, T.p.25]. At home, Plaintiff "usually sit[s] around a lot" with her feet elevated and knits. [DE-13, T.p.20]. She also enjoys crafts and painting. [DE-13, T.p.20]. Plaintiff believes she cannot return to her former employment because of the pain and swelling in her legs when she sits for two hours or more. [DE-13,T.p.37].

**Medical Evidence**

The medical evidence is summarized in pertinent part as follows:

**Chilton Memorial Hospital**

Plaintiff submitted medical records from Chilton Memorial Hospital for treatment she received April 17-21, 2006. [DE-19]. According to the records, Plaintiff sought medical attention for pain and swelling in her legs. Plaintiff also reported heaviness, numbness, and a "burning sensation" in her legs. [DE-19, p.2]. An ultrasound revealed "[n]o evidence of any Deep Venous Thrombosis or obstruction" although there was "[s]ome venous valvular incompetence . . . present on the left." [DE-19, p.2]. There were "[n]ormal venous flow patterns and compression effect in both legs elsewhere." [*Id.*]. The final report from the radiology department at Chilton found "patent deep venous flow from the common femoral veins in the groins down to the posterior tibial veins in the calves" and "normal venous compressibility and appropriate augmentation of flow throughout." [DE-19, p.13]. The report concluded that ultrasound was "therefore negative for the presence of significant DVT of the right and left lower

6

extremities." [DE-19, p.13].

**Paterson Medical Evaluations**

Dr. C.S. Sivadas of Paterson Medical Evaluations conducted a medical evaluation of Plaintiff on behalf of the Division of Disability Determination Services in the Department of Labor for New Jersey. [DE-19, p.15]. According to his report, dated September 27, 2006, Dr. Sivadas assessed Plaintiff with hypertension, morbid obesity, and "[s]uperficial dilated venules, lower extremity." [DE-19, p.17].

**O.I.M. Radiological Group**

An x-ray of Plaintiff's left knee from September 26, 2006 at O.I.M. Radiological Group showed mild degenerative osteoarthritis. An x-ray of her left wrist was normal. [DE-19, p.18].

**Advanced Eye Care Center**

Dr. Nancy Choo at Advanced Eye Care Center evaluated Plaintiff on October 11, 2006 for her vision. [DE-19, p.21]. Plaintiff alleged vision problems from "optic nerve damage." [DE-19, p.19]. She also testified at the hearing that she has "damage to her eyes." [DE-13, T.p.35]. Plaintiff told Dr. Choo she had difficulty focusing her near vision. Dr. Choo found Plaintiff's corrected vision was 20/25 in her right eye and 20/20 in her left. [DE-19, p.22-23]. Plaintiff's vision was basically within normal limits. [DE-19, p.19].

**Physical RFC Asessment**

Dr. Joseph Micale, a medical consultant, performed a physical residual functional capacity assessment of Plaintiff. [DE-20, pp.2-9]. In a report dated October 30, 2006, Dr. Micale found that Plaintiff can occasionally lift twenty pounds; frequently lift ten pounds; stand or walk with normal breaks at least two hours in an eight-hour workday; and sit with normal breaks for about six hours in an eight-hour workday.

7

**Dr. Frank Parker**

Plaintiff submitted additional medical evidence to the AC after the ALJ denied her request for benefits. The additional evidence was a letter from her treating physician, Dr. Frank M. Parker, dated December 15, 2008. [DE-20, p.13]. In the letter, Dr. Parker noted he has been treating Plaintiff for "chronic venous disease in her lower extremities." [DE-20, p.13]. Dr. Parker first saw Plaintiff in March of 2008 for "what appeared to be an episode of acute thrombophlebitis on top of her chronic venous insufficiency." [DE-20, p.13]. Dr. Parker observed that Plaintiff is "able to sit for less than an hour before she will have to get up and move or put the legs up for her discomfort." [*Id.*]. She also "has significant discomfort with ambulation" and "requires a cane and a walker to get around." [*Id.*]. Dr. Parker believed she was "significantly limited in her ability to get around as well as in her ability to work." [DE-20, p.14]. Dr. Parker planned to order another ultrasound of Plaintiff's legs and recommended "thigh-high compression stockings to see if this would give her some better relief of her lower extremity symptoms." [DE-20, p.14].

Further facts are set out as necessary in evaluating Plaintiff's arguments.

**Analysis of Plaintiff's Arguments**

Plaintiff argues the ALJ (1) failed to follow the two-step process in evaluating her pain and other symptoms and (2) failed to properly determine her RFC. Plaintiff further contends (3) the Appeals Council failed to make specific findings concerning new and material evidence, and that (4) new and material evidence requires remand.

**(1) The ALJ properly evaluated Plaintiff's pain and other symptoms**

Plaintiff argues the ALJ failed to follow the two-step process in evaluating her pain and other symptoms. "[T]he determination of whether a person is disabled by pain or other symptoms

8

is a two-step process." Craig, 76 F.3d at 594. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b))(emphasis omitted). An ALJ must therefore first determine whether a claimant has met the threshold showing with objective evidence demonstrating the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant. *Id.*

> It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Id.* at 595. At this second step, the ALJ considers all the available evidence, including the claimant's statements regarding pain, objective medical evidence of pain, medical history, medical signs, laboratory findings, and "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.*

Here, Plaintiff asserts the ALJ "failed to make the express finding required in step one, and proceeded directly to make the credibility determinations of step two." [DE-26, p.8]. Plaintiff is mistaken. In his decision, the ALJ expressly recited the two-step process he was required to follow:

> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairement(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or

> other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

[DE-12, p.18]. The ALJ then recounted the evidence submitted and stated that "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]" Thus, the ALJ expressly determined Plaintiff had met the threshold showing with objective evidence demonstrating the existence of a medical impairment that could reasonably be expected to produce at least some of the pain and other symptoms to which she testified.

Plaintiff also complains the ALJ failed to follow step two because, according to Plaintiff, he did not sufficiently explain his credibility findings. The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [her] residual functional capacity assessment." [DE-12, p.20]. The ALJ explained:

> Based on the entire record, including the testimony of the claimant, I conclude that the evidence fails to support the claimant's assertions of disability. I find much of the claimant's complaints are basically subjective and without substantial medical foundation. The fact that the claimant makes assertions of disability does not compel a finding of disability. The limitations to which she testified are far in excess of those which would reasonably be consistent with objective medical evidence and are not consistent with the other evidence. The record as a whole, considering all medical and non-medical elements, does not support the extent of the claimant's subjective complaints. The above summarized testimony of the claimant sets forth the basic allegations regarding

10

> pain, medication, treatment, functional limitations, daily activities and work history. Although the assertions of pain are reasonable to a degree, the overall record does not support them to the debilitating extent asserted. In this regard, I note that the claimant testified that she was terminated from her last main job and did not leave due to her medical condition (testimony). Moreover, in her testimony, she described a level of incapacity not supported or corroborated by the medical evidence.
>
> The above residual functional capacity assessment is supported by the state agency medical consultants.

[DE-12, p.20]. Thus, according to the ALJ, Plaintiff's assertions of disability were not credible because her alleged limitations were inconsistent with both the medical evidence and the non-medical evidence. Her assertions of pain, although "reasonable to a degree" were similarly unsupported by the record as a whole. The ALJ moreover found that the RFC was supported by the state agency medical consultants, and that the medical evidence did not corroborate the level of incapacity alleged by Plaintiff. Finally, the ALJ noted that Plaintiff was terminated from her most recent employment for reasons unrelated to her medical condition. Thus, the ALJ gave ample explanation for his evaluation of Plaintiff's credibility. Because the ALJ properly followed the two-step process in evaluating Plaintiff's pain and other symptoms, this assignment of error lacks merit.

**(2) The ALJ properly evaluated Plaintiff's RFC**

Plaintiff contends the ALJ "failed to take all limitations into account" in determining Plaintiff's RFC. Plaintiff argues that "if [her] statements are credited, she is not able to return to her previous work, nor is she capable of a full range of sedentary work." [DE-26, p.11]. However, these "limitations" to her RFC as asserted by Plaintiff in her statements are the same alleged limitations that the ALJ explicitly rejected as not being credible: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

11

credible to the extent they are inconsistent with the above residual functional capacity assessment." [DE-12, p.20]. Inasmuch as Plaintiff asserts the ALJ should have afforded her statements greater credibility, it is not this Court's role to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. The assignment of error therefore lacks merit.

### (3) The AC is not required to make findings concerning new evidence

In reviewing the ALJ's decision, the AC stated it had considered the additional medical evidence supplied it by Plaintiff. Specifically, the AC considered a letter by Plaintiff's treating physician, Dr. Frank Parker. [DE-20, pp.13-14]. The AC found, however, that the information did "not provide a basis for changing the Administrative Law Judge's decision." [DE-12, p.3]. Plaintiff argues that the Court should remand this matter because the AC failed to explicitly make findings to indicate the weight given to the additional evidence received by it.

This Court considered and rejected an identical argument posited by the claimant in King v. Barnhart, 415 F. Supp. 2d 607 (E.D.N.C. 2005). In King, the Court explained "a per se rule that remand is necessary in all cases where the Appeals Council admits new evidence without a detailed assessment . . . is not supported [by] either [] 20 C.F.R. § 404.970 or [] Fourth Circuit precedent." *Id.* at 611 n.1. Rather, the Court held that where the AC does not make an independent evaluation of newly submitted evidence, the court's role in reviewing the final decision of the Commissioner is "to consider the entire administrative record, including the new evidence received by the Appeals Council, and determine if the decision of the ALJ was supported by substantial evidence." *Id.* at 612; *see also* Wilkins v. Sec'y, Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including

12

the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"). Plaintiff's argument has been repeatedly rejected in the face of this Court's decision in King. *See, e.g.*, Smith v. Astrue, No. 7:09-CV-82-FL, 2010 U.S. Dist. LEXIS 81199, at *6 n.1 (E.D.N.C. Aug. 10, 2010); Alexander v. Astrue, No. 5:09-CV-432-FL, 2010 U.S. Dist. LEXIS 118039, at *13-15 (E.D.N.C. July 19, 2010). This assignment of error is therefore without merit.

### (4) New evidence

Plaintiff seeks remand to introduce several documents she contends constitute new and material evidence in support of her claim. The Court may remand for the Commissioner to consider additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence is new if it is "'not duplicative or cumulative,'" Gorham v. Astrue, No. 4:05-CV-00136-FL, 2008 U.S. Dist. LEXIS 95539, at *4 (E.D.N.C. Nov. 24, 2008) (quoting Wilkins, 953 F.2d at 96), and is material if "'there is a reasonable possibility that [it] would have changed the outcome.'" *Id.* The claimant bears the burden of showing the requirements of section 405(g) have been met. *Id.*

Here, Plaintiff submits a statement from her current treating physician, Dr. Frank Parker, as well as medical records from the Brody School of Medicine at East Carolina University ("ECU") and from Eastern Radiologists in Greenville, North Carolina. Plaintiff asserts these records were unavailable at the time the AC reviewed her case. She concedes that most of the treatment occurred after the date she was last insured for social security disability insurance benefits, but nevertheless contends the evidence is relevant to prove her previous disability. *See* Abernathy v. Astrue, No. 4:08-CV-99-FL, 2009 U.S. Dist. LEXIS 47902, at *4-5 (E.D.N.C. June 3, 2009) (noting that medical records generated post-date last insured ("DLI") may be probative of

13

disability prior to DLI).   The undersigned considers the evidence in turn.

**Statement from Dr. Frank Parker**

Dr. Parker is Plaintiff's current treating physician; he first saw Plaintiff on March 17, 2008. [DE-26-1, p.3].   In his statement, Dr. Parker describes Plaintiff as having "significant chronic venous disease in both her lower extremities," with "significant swelling" and "venous insufficiency in multiple distributions throughout both lower extremities."   [DE-26-1, p.2].   Dr. Parker notes that surgical therapy is unavailable for Plaintiff, and that she requires conservative therapy with compression stockings, which provide "adequate relief of the symptoms within the veins under compression."   [DE-26-1, p.2].   However, "at the top of the stockings as well as in the upper thighs, [Plaintiff] continues to have significant discomfort."   [DE-26-1, p.2].   Dr. Parker believes Plaintiff's pain "is certainly commensurate with her disease" and advises that she "needs to keep her legs elevated as much as possible and as high as possible" with "[e]levation to at least heart level" being "most beneficial."   [DE-26-1, p.2].   According to Dr. Parker, Plaintiff's limitations have existed since he first saw her "and likely months or even years, before then."   [DE-26-1, p.3].

The undersigned concludes this document fails to meet the requirements of section 405(g). First, Dr. Parker's statement is duplicative of other evidence already in the record.   Certainly there is nothing new about the fact that Plaintiff has venous insufficiency, or that she uses compression stockings to treat her symptoms.   Indeed, the AC considered a similar statement from Dr. Parker dated December 15, 2008.   [DE-20, pp.13-14].   There, Dr. Parker noted that Plaintiff experienced "significant swelling" and "significant discomfort" where her stockings did not reach. [DE-20, p.13].   He believed she was "significantly limited in her ability to get around as well as in her ability to work."   [DE-20, p.14].   Yet the AC found that Dr. Parker's "information does not

14

provide a basis for changing the Administrative Law Judge's decision." [DE-12, p.3]. As Dr. Parker's new statement merely duplicates other evidence already in the record, including his earlier statement, it is not reasonably likely that it would have changed the outcome of the ALJ's decision, and is therefore not material.

Moreover, even if Dr. Parker's newly proffered statement contained new material evidence, Plaintiff has not shown "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). This is because there is nothing to indicate that Dr. Parker's new statement was based on any medical evidence unavailable during the administrative proceedings. Dr. Parker began treating Plaintiff on March 17, 2008. The hearing before the ALJ was held on August 14, 2008, and a decision did not issue until October 28, 2008. The AC considered additional evidence submitted by Plaintiff but still denied review on July 27, 2010. As such, Plaintiff had ample time to submit the second statement from Dr. Parker, if she believed it contained new information vital to her claim. As this Court has stated,

> [t]o permit remand for evidence such as this would open the door to remand in any case where the plaintiff returns to a treating doctor to get a letter stating that the doctor disagrees with the ALJ's decision. Such a result is inconsistent with the good cause requirement's purpose of preventing these cases from going on indefinitely.

Gorham, 2008 U.S. Dist. LEXIS 95539, at *11 (citing Melkonyan v. Sullivan, 501 U.S. 89, 101, (1991)). Because Plaintiff fails to carry her burden of demonstrating that the statement constitutes new and material evidence, remand is unnecessary.

**Medical Records from ECU and Eastern Radiologists**

Plaintiff also submits medical records detailing care she received at ECU from March 17, 2008 through August 9, 2010 and at Eastern Radiologists from December 23, 2008 through April

15

15, 2009. [DE-26-1, pp. 4-36]. The medical records document Plaintiff's venous insufficiency, her medications, and the various procedures performed to analyze and treat Plaintiff's symptoms over the two-year time period. After careful consideration, the undersigned concludes that these records present no new and material evidence requiring remand. Rather, the information is cumulative and therefore immaterial. This assignment of error is therefore overruled.

**Conclusion**

For the reasons discussed above, it is RECOMMENDED that Plaintiff's amended motion for judgment on the pleadings [DE-25] be DENIED, that Defendant's motion for judgment on the pleadings [DE-28] be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, April 25, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE